IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELAINE L. CHAO, Secretary of )
Labor, United States )
Department of Labor, )
                                    )
                Plaintiff,          )
                                    )
        v.                          )    No. 06 C 6597
                                    )
UNIQUE MANUFACTURING COMPANY,       )
INC., WAYNE P. KNAUER, BILL P.      )
WILLIAMSON, and UNIQUE 401(k)       )
PLAN,                               )
                                    )
                Defendants.         )

## OPINION AND ORDER

It is undisputed that, from May 22, 2002 through

December 30, 2004, defendant Unique Manufacturing Company, Inc.

("Unique") received withheld employee salary deferrals and

participant loan repayments, but failed to transfer those monies

to the designated ERISA plan, the Unique 401(k) Plan (the

"Plan"). Before the court, on plaintiff Secretary of Labor's

motion for summary judgment, is the question of whether two

individuals are also liable for the failure to make the payments.

Defendant Wayne Knauer ("Knauer") was the President of Unique

from prior to May 2002 until June 2004. He was also the named

Trustee of the Plan during all times pertinent to the nonpayments. Defendant Bill Williamson was the sole owner and employee of BPW Capital Advisors ("BPW"), a management consulting firm. From January 21, 2004 through December 30, 2004, BPW was a management consultant for Unique. The Secretary has moved for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which it or he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hicks, 500 F.3d at 651; Jumer, 472 F.3d at 946. The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex,

- 2 -

477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95 (7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir. 1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir. 1988); Freundt v. Allied Tube & Conduit Corp., 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue

- 3 -

must be 'material.'" Logan, 96 F.3d at 978.
"Irrelevant or unnecessary facts do not preclude
summary judgment even when they are in dispute."
Id. (citation omitted). In determining whether
the nonmovant has identified a "material" issue
of fact for trial, we are guided by the
applicable substantive law; "[o]nly disputes that
could affect the outcome of the suit under
governing law will properly preclude the entry of
summary judgment." McGinn v. Burlington Northern
R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
(citation omitted). Furthermore, a factual
dispute is "genuine" for summary judgment
purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return
a verdict for that party." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
doubt" regarding the existence of a genuine fact
issue is not enough to stave off summary
judgment, and "the nonmovant fails to demonstrate
a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of
fact to find for the non-moving party . . . .'"
Logan, 96 F.3d at 978 (quoting Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
(1986)).

Outlaw, 259 F.3d at 837.

Defendant Knauer is proceeding pro se. He was provided

the required notice as to how to respond to a motion for summary

judgment. See Timms v. Frank, 953 F.2d 281, 283-86 (7th Cir.

1992); Wimberly v. Illinois Cent. R.R., 205 F. Supp. 2d 972,

974-75 (C.D. Ill. 2002); N.D. Ill. Loc. R. 56.2.

No party disputes that Unique failed to transfer certain

payments, nor is there any dispute as to the amount that was not

- 4 -

paid. Williamson contends he was not a fiduciary responsible for making the payments. Knauer contends he was not responsible for any nonpayments that occurred after January 21, 2004, when BPW was retained to manage Unique. Unique is out of business and has not appeared in this case nor presented any opposition to the motion for summary judgment.

During the pertinent time period, the estate of Janet Knauer was the owner of Unique and Debora Klein was the executor of the estate.[1] At all times, Knauer was a named Trustee of the Plan. Unique was the named Administrator of the Plan. The Plan provides that "[t]he Administrator shall administer the Plan in accordance with its terms and shall have the power and discretion to construe the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan." Plan § 2.6.[2] The Administrator's duties include determining the sums of money necessary to contribute to the Trust Fund. Id. § 2.6(g). Unique, as Employer, was to designate one or more persons, employees or not, to act as the Administrator. Id. § 2.4. No evidence is presented as to who was so designated to act as the

_____

[1]Klein and defendant Knauer are siblings.

[2]Plaintiff incorrectly cites § 10.8 of the Plan for this proposition.

Administrator. Until June 2004, Knauer was the President of Unique. Until January 21, 2004, Knauer decided which expenses Unique paid and had signatory authority over all of Unique's bank accounts.

On January 21, 2004, BPW was retained as Unique's management consultant, which effectively meant Williamson, the owner and only employee of BPW, was retained as Unique's management consultant. The engagement letter described the scope of the engagement as: "BPW agrees to act as the exclusive crisis manager, financial advisor and as agent for the Company [Unique] to provide management, financial advisory and investment banking services in connection with the Company establishing a private placement to raise capital or sell the Company . . .; Structure, negotiate and settle all IRS claims and liens, restructure and negotiate secured debt; and increase the income potential and overall business valuation of [Unique] within a 90 day time frame." Williamson was not made an officer or director of Unique. Williamson retained Teresa Burke as an independent contractor to maintain Unique's financial business records. Burke began performing those duties approximately February 10, 2004.[3]

---

[3]Plaintiff contends Burke began on January 21, but Williamson's statement that it was February 10 must be credited.

On January 21, 2004, Knauer's authority over Unique's corporate bank account was terminated.[4] Instead, Williamson, Burke, and Klein had signing authority for the account, but only one signature was required. Klein never signed any checks issued from the corporate account. Burke signed only payroll checks at Williamson's direction. Williamson signed all other checks issued from January 21 to the end of the year, including some payroll checks. In his declaration filed in response to summary judgment, Williamson states Klein, her lawyer and financial advisors, and Unique's bank actually controlled Unique during the time BPW was the management consultant. Williamson further states that he was not permitted to make any expenditure without the approval of this group.[5] Additionally, Williamson states that he was unaware of the existence of the Plan until May 2004, when he discovered checks written to the Plan, but never sent. He states he instructed the Klein Group to pay any contributions that were due, but they would not approve such payments on the ground Unique had insufficient funds.

---

[4]At the time, family members were having disputes about Unique.

[5]Williamson refers to this group as the "control group." That term, however, has a particular meaning under the Multiemployer Pension Plan Amendment Act, 29 U.S.C. §§ 1381-1453. See 29 U.S.C. § 1301(b)(1); Chicago Truck Drivers v. El Paso Co., 525 F.3d 591, 595-96 (7th Cir. 2008). Instead, this group will be referred to as the "Klein Group."

In response to summary judgment, a party cannot rely on an affidavit or declaration that is clearly inconsistent with that party's deposition testimony unless there is a sufficient explanation for the discrepancy. Walker v. Sheahan, 526 F.3d 973, 979 (7th Cir. 2008); Fischer, 519 F.3d at 406-07; Gates v. Caterpillar, Inc., 513 F.3d 680, 688 n.4 (7th Cir. 2008). Plaintiff contends Williamson's statements about needing approval for expenditures and paying the contributions is inconsistent with his deposition testimony. Plaintiff contends the statement that Williamson needed approval for all or virtually all expenditures is inconsistent with deposition testimony that he only met with Klein Group members three to five times. That, however, is a mischaracterization of the deposition testimony and is not inconsistent with the challenged statements in Williamson's declaration. At his deposition, Williamson testified that he made three to five in-person "presentations"[6] to the group. Williamson Dep. at 88-89. Williamson also testified that telephone discussions occurred in which approval was sought for recommendations. Id. at 89, 94. Williamson also referred to in-person "meetings," which may have been different from "presentations." Id. at 89. Moreover, Williamson expressly

---

[6]"Presentation" was a term used by plaintiff's attorney in his question. It was not defined, but appears to have been understood to mean a more formal meeting in which BPW's findings or proposals were presented.

testified that he needed approval for checks and, without approval, could only issue checks for "normal inexpensive not large transactions, some utility bills, office supplies." Id. at 92. He clearly testified that the Klein Group would not let him pay past due, pre-January 21, 2004 contributions on the ground there was not sufficient money. Id. at 94-95. He also testified that he told them this practice had to stop, leaving the implication that any further failures to pay contributions, including throughout 2004, were due to the Klein Group not approving payment due to lack of funds. Id. Plaintiff points to Burke's declaration that she prepared checks to pay the contributions, but Williamson instructed her not to send them. Burke Decl. ¶¶ 10-14. At most, however, that creates a genuine factual dispute.[7] On plaintiff's motion, such disputes must be resolved in defendants' favor.

Even taking Williamson's facts as true, plaintiff contends that Williamson being a signatory on the corporation's account made him a fiduciary responsible for ensuring that the

---

[7]Burke states, "[f]rom January 21 through December 30, 2004," Burke Decl. ¶ 10, she prepared checks to pay the contributions. If she means that literally, this contradicts Williamson who states it was not until May that he was aware of the need to pay contributions. However, if Burke only means that, at some time, she prepared checks to pay the contributions, that could be fully consistent with Williamson's testimony, including that the Klein Group would not approve sending the payments.

contributions were paid. ERISA provides: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).[8] Plaintiff focuses on the definition contained in the final clause of subsection (i): "exercises any authority or control respecting management or disposition of its assets." Unlike the other alternatives in subsection (i) and (iii), this definition does not include "discretionary." The Seventh Circuit has not addressed the issue, but the majority of other circuits have held that the exercise of even ministerial control or authority over plan assets will be sufficient to make a person or entity a fiduciary. See Briscoe v. Fine, 444 F.3d 478, 490-94 (6th Cir. 2006); Chao v. Day, 436 F.3d 234, 236 (D.C. Cir. 2006); Coldesina, v. Estate of Simper, 407 F.3d 1126, 1132 (10th Cir. 2005); Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003); LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997);

---

[8]Under this provision, "a person deemed to be a fiduciary is not a fiduciary for every purpose but only to the extent that he performs one of the described functions." Klosterman v. Western Gen. Mgmt., Inc., 32 F.3d 1119, 1122 (7th Cir. 1994). Accord Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 477 (7th Cir. 2007).

IT Corp. v. General Am. Life Ins. Co., 107 F.3d 1415, 1421
(9th Cir. 1997); FirsTier Bank, N.A. v. Zeller, 16 F.3d 907,
911 (8th Cir. 1994). But see Useden v. Acker, 947 F.2d 1563,
1575 (11th Cir. 1991).[9] The district court cases in the Seventh
Circuit are split. Compare Connelly Mgmt. Employee Welfare
Benefit Plan v. North Am. Indem., N.V., 2008 WL 1336085 *11
(S.D. Ind. April 8, 2008) (citing Coldesina, supra; IT Corp.,
supra) ("Consistent with the plain language of ERISA § 3(21)(A),
case law makes clear that any control over plan assets, as for
example check writing or other authority on bank accounts holding
such assets, makes the party a fiduciary regardless of whether
any 'discretion' is involved."), and Chao v. Crouse, 346 F. Supp.
2d 975, 985 (S.D. Ind. 2004) (owners of corporation, who were
also an officer and director, were fiduciaries because they
exercised control over payments from corporate bank account into
which plan premiums paid by employers were deposited, citing
LoPresti, supra; IT Corp. supra), with Central Ill. Carpenters
Health & Welfare Trust Fund v. S & S Fashion Floors, Inc.,
516 F. Supp. 2d 931, 934, 936, 938 (C.D. Ill. 2007) (president
of corporation could only be liable as fiduciary for failing to

---

[9]Herman v. NationsBank Trust Co., (Georgia), 126 F.3d
1354, 1366 (11th Cir. 1997), is to the contrary, but that aspect
of Herman may be dictum and it does not consider Useden. See
also International Painters & Allied Trades Indus. Pension
Fund v. Aragones, 2008 WL 2415025 *3-5 (M.D. Fla. June 12, 2008)
(discussing Eleventh Circuit law on this issue).

turn over withheld contributions to plan if she had discretionary control over decision to dispense corporate assets for that purpose), and Chicago Dist. Council of Carpenters Pension Fund v. Angulo, 150 F. Supp. 2d 976, 978-79 (N.D. Ill. 2001) (not every failure to turn over contributions by a person controlling a corporation's assets "equates to . . . exercising . . . control over the 'disposition' of a plan's assets, so as to impose fiduciary liability by reason of the nonpayment").[10] The majority view of the circuit courts, which is consistent with the plain language of the statute, will be followed.

Still, the majority view does not hold that absolutely any control over a plan's assets is sufficient to make a person a fiduciary. There must be "practical control." Briscoe, 444 F.3d at 494; IT Corp., 107 F.3d at 1421. Fiduciary status does not extend to a person who "exercises mere possession or custody" over a plan's assets. Day, 436 F.3d at 237; Briscoe, 444 F.3d at 494. A person who has authority over a plan's assets, but never exercises it, also is not a fiduciary. Lopresti, 126 F.3d at 40-41 (one defendant who had signing authority for checking account, but never actually signed any checks nor actually

---

[10]Other district court cases in the Seventh Circuit hold that corporate officers cannot be liable for failure to forward contributions unless they have discretionary authority. See, e.g., Chao v. Linder, 2007 WL 1655254 *10-11 (N.D. Ill. May 31, 2007). That line of cases is not applicable to the present case because Williamson was not a corporate officer.

exercised any other authority over the account, was not a fiduciary).

Cases holding that the defendant is a fiduciary include situations in which the defendant had signing authority for an account having plan assets. In all those cases, however, the defendant had the ability to decide which items to pay and when. See Simper, 407 F.3d at 1134; Lopresti, 126 F.3d at 40; IT Corp., 107 F.2d at 1421-22. Simper noted, though, that that factor was not determinative. Simper, 407 F.3d at 1134 ("the dichotomy between discretionary and ministerial authority is not determinative regarding control over assets"). A defendant in Simper also argued that he was merely following a plan adviser's directions as to issuing checks. The court held this did not matter since the defendant was a fiduciary because he was entrusted with the assets held in the account. Id. at 1131.

In accordance with a Labor Department regulation, Plan contributions that were withheld by Unique became Plan assets no later than the fifteenth day of the month following the date the employees were paid. 29 C.F.R. § 2510.3-102(b); S & S Fashion, 516 F. Supp. 2d at 935-37. See also United States v. Whiting, 471 F.3d 792, 799-800 (7th Cir. 2006). Since contributions withheld from employees remained in Unique's corporate account, the corporate account contained Plan assets. If Williamson exercised practical control over that account, he was a fiduciary

- 13 -

of the Plan. Undisputed facts support that Williamson had signing authority for the account and actually exercised that authority beginning January 21, 2004 or shortly thereafter. He was the primary person signing checks issued from that account and supervised Burke to the extent she issued payroll checks from the account. Although Williamson followed the Klein Group's instructions regarding payments out of the account, Williamson still had substantial control over the funds in the account. Like defendant Madsen in Simper, although not authorized by those above him, Williamson could have withdrawn money from the account for any purpose. See Simper, 407 F.3d at 1133. Undisputed facts support that Williamson was a fiduciary as that term is defined in § 1002(21)(A)(i).

As a fiduciary over Plan assets held in trust by Unique, Williamson is liable for not ensuring that those assets were transferred to the Plan and for allowing Plan assets in the corporate account to be instead spent on other expenses of Unique. See 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A), 1106(b)(1)-(2).

Knauer does not dispute that he is liable for the unpaid contributions from prior to January 21, 2004. However, he contends that, after that date, he did not control the bank account that contained Plan assets, nor did he have any knowledge of whether contributions were being paid by Unique. He contends

that he did not learn of the failure to forward the withheld monies until the Department of Labor contacted him regarding its investigation. In his response to summary judgment, Knauer identifies paragraphs of plaintiff's Local Rule 56.1(a)(3) statement with which he disagrees. Knauer specifically disagrees with ¶ 35 of plaintiff's statement, which concerns Knauer's knowledge that withheld funds were not being forwarded to the Plan after January 21, 2004. Knauer signs his response: "I declare under penalty of perjury under the laws of the United states [sic] that the foregoing is true and correct." That satisfies the requirement for an unsworn declaration that may be considered in response to summary judgment. See 28 U.S.C. § 1746. To the extent statements in the response are based on personal knowledge, they may be considered.

Plaintiff contends that Knauer's declarations regarding his lack of knowledge should be ignored because it is inconsistent with his prior testimony and admissions. Not only does plaintiff fail to point to inconsistent statements by Knauer, plaintiff does not even point to contrary evidence supporting that Knauer had the alleged knowledge during 2004. None of the documents cited in ¶ 35 of plaintiff's Rule 56.1(a)(3) statement support that Knauer had knowledge during 2004 that the withheld amounts were not being forwarded to the Plan. Plaintiff cites to ¶ 23 of the First Amended Complaint and

- 15 -

Knauer's Answer. Paragraph 23, however, does not allege Knauer's knowledge. It alleges: "By [Unique's retention of withheld contributions and loan repayments from October 8, 2003 through December 30, 2004], Knauer violated ERISA § 405(a)(2) and is liable as a co-fiduciary for failing to comply with his monitoring responsibilities as a fiduciary under ERISA § 404(a)(1)(B) which enabled Unique and Williamson to breach their fiduciary duties." Moreover, Knauer's pro se Answer, which did not respond paragraph-by-paragraph to the First Amended Complaint, admitted that the withheld monies were not forwarded during that entire time period (which includes time before January 21, 2004) and that, during part of that time, Knauer himself "failed to ensure" the amounts were timely deposited into the Plan's account. However, Knauer specifically answered: "I do not agree that during the periods from Jan. 21, 2004 through Dec. 30, 2004 that I should be responsible for any of the voluntary participant salary withholdings and loan repayments that Bill Williamson failed to even remit to the plans [sic] account. When Bill Williamson took over all financial responsibilities and signatory authority when I was removed from that responsibility he did not even give me access to any documentation nor was I provided with any information that would even lead me to believe that he had not taken care of that responsibility in full." Knauer's Answer to the First Amended

Complaint is consistent with his statements in response to summary judgment.

Plaintiff also cites to Knauer's response No. 21 to plaintiff's requests for admissions. However, the page of the response to requests for admissions containing that response is not included in plaintiff's summary judgment submission. In other responses that are provided, Knauer denied having knowledge of the nonpayments during the time Williamson was the management consultant. See Requests to Admit Resp. Nos. 22-24, 26.

Plaintiff also cites page 34 of Knauer's deposition. Plaintiff does not provide the pages immediately preceding and following this page so it is difficult to precisely understand the statements on this page of testimony. While plaintiff makes a statement about unremitted contributions not being current at some point after Knauer "left the company," Knauer does not state in this testimony when he learned the contributions had not been paid.

On plaintiff's motion for summary judgment, it must be taken as true that, during 2004, Knauer was unaware that Unique was not forwarding withheld contributions and loan payments. Plaintiff contends that, even absent actual knowledge, Knauer is liable for breaching his fiduciary duty to monitor that proper payments were being made to the Plan. Plaintiff cites to the responsibility to monitor an appointed or designated co-fiduciary

to ensure that the co-fiduciary is performing adequately enough to continue in the position. See Pl. Reply to Knauer [73] at 2-3 (citing 29 U.S.C. § 1105(c)(2)(A)(iii); Sandoval v. Simmons, 622 F. Supp. 1174, 1215-16 (C.D. Ill. 1985)). The facts before the court on summary judgment, however, are that, in 2004, the Klein Group took away Knauer's control of Unique and the Klein Group, not Knauer, retained Williamson to run Unique. Since Knauer did not appoint Williamson to the position that made Williamson a functional fiduciary, Knauer cannot be liable based on § 1105(c)(2).

In her opening brief, however, plaintiff did not limit her theory of Knauer's liability to failing to monitor an appointed co-fiduciary. As Trustee of the Plan, Knauer was a fiduciary of the Plan. 29 C.F.R. § 2509.75-8 Question D-3; Schmidt v. Sheet Metal Workers' Nat'l Pension Fund, 128 F.3d 541, 547 (7th Cir. 1997); Chao v. Wheeler, 2007 WL 4233464 *5 (N.D. Ind. Nov. 28, 2007). Although relieved of control of Unique in 2004, Knauer continued to be the named Trustee. He continued to have fiduciary responsibilities to the Plan even if he was no longer actually exercising the powers of that office. Wheeler, 2007 WL 4233464 at *5 & n.3. Regardless of the specific duties stated in the Plan, as Trustee of the Plan, Knauer had the inherent duty to monitor and reasonably investigate that the employer (Unique) was making proper payments to the Plan,

- 18 -

including reasonably following up on any suspicions that proper and adequate payments were not being made. See Best v. Cyrus, 310 F.3d 932, 935-36 (6th Cir. 2002); Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 917-18 (2d Cir. 1989); Wheeler, 2007 WL 4233464 at *7-8. Prior to losing control of Unique, Knauer was well aware that withheld amounts were not being forwarded to the Plan and that Unique was in financial trouble. Nevertheless, while continuing to be Trustee of the Plan in 2004, Knauer made no effort to ascertain whether Unique was properly forwarding payments to the Plan. He admits that, in 2004, he left that responsibility completely in the hands of Williamson or whoever else was running Unique. Since none of the withheld monies were being forwarded to the Plan, a cursory examination of the Plan's records would have revealed the lack of payments and necessitated that the Plan's Tustee take reasonable action to seek the payments. Since Knauer completely abdicated that role in 2004, he breached his fiduciary duties.

While undisputed facts show that Knauer breached his fiduciary duty as Trustee, plaintiff does not attempt to prove the amount of damages arising from such a breach. Plaintiff shows the amount of funds withheld and unpaid after January 21, 2004. However, plaintiff makes no attempt to show that a reasonable effort would have resulted in all the withheld monies being collected. If Williamson and/or the Klein Group had

refused to voluntarily comply with a request for payment, Knauer would have had to decide whether it was reasonable to follow up with a lawsuit. Plaintiff does not attempt to show whether voluntary compliance could be expected and, if not, whether a lawsuit was likely to result in any recovery. Cf. Diduck, 874 F.2d at 918 (trustees could not have successfully collected unpaid contributions from employer-subcontractor, but may have been able to collect them from the developer).

Plaintiff is entitled to a judgment against Unique for all unpaid contributions and loan repayments which total $17,080.95 plus lost opportunity costs.[11] Williamson is liable for the unpaid amounts from on and after January 21, 2004 which total $10,799.10 plus lost opportunity costs. Knauer is liable for unpaid amounts from prior to January 21, 2004, which total $6,281.85 plus lost opportunity costs. The amount, if any, that Knauer owes from on and after January 21, 2004 must be determined. Since the amount of Knauer's liability for the latter period and another issue discussed below remain unresolved, no judgment will be entered at this time.

Plaintiff also seeks injunctive relief permanently enjoining Williamson and Knauer from providing any services to an

---

[11]The lost opportunity costs are equivalent to prejudgment interest. Plaintiff has computed those amounts through May 2008. A new calculation will have to be provided when it is appropriate to enter judgment.

- 20 -

ERISA plan. Williamson contends his violation is not serious enough to justify such an injunction. Knauer does not address the issue of relief. On the facts presently before the court, Williamson was dealing with a corporation that had limited funds and was following instructions of an ownership group. The unpaid amounts total just over $10,000. There would have been a sufficient basis to remove Williamson and Knauer as fiduciaries of the Plan, but that is no longer an issue. A recent case from this district refers to a permanent injunction being "an appropriate remedy under ERISA § 409, where individuals are found to have participated in egregious self-dealing or other serious misconduct." Chao v. Linder, 2007 WL 1655254 *15 (N.D. Ill. May 31, 2007). Plaintiff does not cite any case that grants the type of injunction requested that involves no personal benefit to the fiduciary and loss to a plan in the limited amount involved here. Based on the facts before the court on summary judgment, no injunction will be entered against Williamson. If plaintiff desires to continue to pursue such relief, she should so inform the court at the next status hearing. As to Knauer, he apparently was a minority owner of Unique or a beneficiary of the trust that was a majority owner so he received at least some indirect benefit from Unique's failure to forward appropriate payments. Still, Knauer's breaches do not reach the egregious levels of the situations in the cases cited by plaintiff. On the

facts before the court on summary judgment, no injunction will be granted as to Knauer.

One last issue is that Williamson's attorneys have moved to withdraw[12] contending they have irreconcilable differences with their client. The attorneys do not describe, or even hint at, the nature of the irreconcilable differences. They do not state in their motion that Williamson agrees to their withdrawal. Since the pending motion states insufficient grounds for a withdrawal, the motion will not be granted.

Prior to the next status hearing, the parties shall meet to discuss the possibility of settlement. If that is not possible, the parties shall consider agreeing to a referral to the assigned magistrate judge for resolution of any issues for trial. At the next status hearing, the parties shall either advise the court that the case is settled or be prepared to advise the court as to what procedures will be necessary to resolve remaining factual and legal disputes.

---

[12]Three attorneys from Quarles and Brady bring the motion. The docket also reflects an appearance from Robert Lang of Holland and Knight, but he did not participate in the summary judgment briefing. The attorneys moving to withdraw do not state in their motion that Williamson will continue to be represented by Lang if they withdraw. If Lang previously ceased representing Williamson or his name appears on the docket in error, Lang should bring an appropriate motion.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [54] is granted in part and denied in part. A status hearing will be held on January 28, 2009 at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: JANUARY          , 2009